# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

JOSE G. SANTIAGO, JR.,

     Petitioner,

  v.           Case No. 04-CV-788

MICHAEL THURMER,
Warden of Waupun Correctional Facility

     Respondent.

_____

# ORDER

  The petitioner, Jose Santiago, Jr. ("Santiago"), originally filed this petition in 2004, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket #1). The judge assigned to the case at the time, Judge Lynn Adelman, stayed the case to allow the petitioner an opportunity to present his unexhausted claims to the state courts. (Docket #48). The petitioner did so and elected to reopen his case in late December of 2007. (Docket #49). The petition was fully briefed in August of 2008. (Docket #67). On March 17, 2009, Judge Adelman addressed four outstanding motions made by Santiago relating to his petition, but the court opted not to address the underlying merits of the case. (Docket #68). In late October of 2009, the case was randomly reassigned to this branch of the court. (Docket #69). With the benefit of the parties' briefs, the court proceeds to address Santiago's petition, beginning with the factual and procedural background animating the case.

## BACKGROUND

On September 10, 2001, Nicole Boone ("Boone"), a twenty-seven year old mother of two was beaten to death in the parking lot of her apartment complex by her ex-boyfriend, Jose Santiago.[1]  A friend who was with Boone hid in the parking lot, but witnessed the entirety of the event and, ultimately, positively identified the petitioner as Boone's murderer.  Santiago was arrested soon after and bound over for trial after a preliminary hearing was held on September 21, 2001, in Wisconsin state court.  Santiago's trial attorney, Martin E. Kohler ("Kohler"), and the state prosecutor negotiated a plea agreement whereby, in exchange for Santiago's no-contest plea to one count of first-degree reckless homicide, with a maximum penalty of forty years of confinement followed by twenty years of extended supervision, the state of Wisconsin would recommend a reduced sentence because Santiago had plead guilty or no contest.  After filling out and signing a guilty plea questionnaire and wavier of rights form in which Santiago stated that he understood the nature of the state's charges, the maximum penalties, and the constitutional rights he was giving up by entering a plea, the petitioner entered a plea of "no contest" to one count of first-degree reckless homicide in violation of Wis. Stat. § 940.02(1) at a hearing in Milwaukee County Circuit Court on January 2, 2002.  During his plea colloquy, Santiago again stated that:  (1) he understood the various rights he was giving up

---

[1] The court will not recount in detail what occurred on September 10, 2001, as the details of the beating are irrelevant to the present issue before the court.  Santiago does not dispute that he beat Ms. Boone to death.  Rather, he argues that procedural errors require that this court grant him a writ of habeas corpus. This note, however, is not meant to downplay the severity and gruesomeness of the attack on Ms. Boone.

Case 2:04-cv-00788-JPS   Filed 04/29/10   Page 2 of 20   Document 71

by choosing to plead no contest; (2) no threats were made to force him to plead no contest; (3) he understood the elements of the charge to which he was about to plead; (4) he was satisfied with the representation he had received from his defense counsel; and (5) he was not contesting the factual allegations of the criminal complaint. Based on Mr. Santiago's averments, the court found that the defendant entered into his plea "freely, voluntarily, and intelligently and with full understanding of the nature of the charge and the maximum possible penalties and all the rights being given up by pleading no contest." ("Plea Hearing" January 2, 2002, Tr. at 10). The petitioner seemingly had accepted responsibility for his actions and was prepared to serve a substantial prison sentence.

However, a month and a half later, on February 17, 2002, Santiago had an apparent change of heart, and he wrote a letter seeking leave of the court to withdraw his no-contest pea. Santiago's letter can only be described as rambling and confusing. Santiago claimed that he was "confused" and "did not understand what rights" he would be "giving up." He then told the court that he was accepting "full responsibility" for his actions, but then Santiago abruptly questioned whether his attack or Ms. Boone's "seizures" were the real cause of the victim's death. Santiago then wrote for a page and a half, accusing Ms. Boone of chronic drug use and child abuse.[2] The petitioner's letter then abruptly changed course, with Santiago writing

---

[2] The court notes that Judge DiMotto, who presided over a February 21, 2002 hearing, found that all of the complaints by Santiago regarding Ms. Boone's behavior were "unsubstantiated and untrue." ("Hearing, February 21, 2002, Tr. at 3).

Case 2:04-cv-00788-JPS   Filed 04/29/10   Page 3 of 20   Document 71

that he was not trying "excuse" his actions. Instead of ending the letter, however, the petitioner continued for four more pages, blaming his attack on Ms. Boone's actions. The letter concluded with Santiago stating that he "hope[d] the court would let him do this," with "this" presumably meaning withdraw his plea.

However, Mr. Santiago's hopes were not realized. During a February 25, 2002 hearing, the court allowed Santiago to voice his reasons for withdrawing his no-contest plea. The petitioner stated that he wanted to "go to [a] jury trial," that the district attorney had "threaten[ed] to amend the charges to first degree intentional homicide" if the plea was withdrawn, and that Santiago was upset that the plea involved dropping misdemeanor charges that were pending against him.[3] ("Hearing," February 25, 2002, Tr. at 3-4). Circuit Court Judge Joseph Donald denied Sanitago's request to withdraw his plea, finding that the petitioner was merely attempting to delay sentencing on the matter and that the petitioner had fully understood the rights he was waiving by making a plea of no-contest. *Id.* at 7. The following day, Santiago was sentenced to a term of thirty-five years in prison, five years less than the statutory maximum. Wis. Stat. §§ 940.02(1), 939.50(3)(b), and 973.01(2)(b)(1) and (2)(d)(1).

Santiago appealed his sentence. However, on November 20, 2002, the petitioner's newly appointed appellate counsel filed a no-merit report pursuant to Wis. Stat. § 809.32, contending that there was no arguable merit to Santiago's

---

[3] The court is confused, as was the Milwaukee County circuit court, as to why the latter two reasons were proffered as arguments for *withdrawing* the no contest plea.

appeal.  The petitioner contested the no-merit report, arguing that:  (1) his plea was involuntary and unintelligent; (2) his trial attorney was ineffective by not introducing "mitigating" evidence during the sentencing that might have reduced Santiago's term of imprisonment; and (3) the trial court's sentence was excessive.[4]  On May 14, 2003, the Wisconsin Court of Appeals adopted the appellate counsel's report, dismissing the appeal.  A little more than four months later, the Supreme Court of Wisconsin denied Santiago's petition for review.

On August 18, 2004, Santiago filed a petition for a writ of habeas corpus in this court, which was randomly assigned to Judge Lynn Adelman.  (Docket #1). After a year and a half of filings and a bevy of motions, Judge Adelman opted to stay this action in order to allow the petitioner to pursue additional claims in state court. (Docket #48).  However, before Judge Adelman stayed the present case, on June 3, 2005, Santiago filed a motion to collaterally challenge his conviction in Wisconsin circuit court in Milwaukee County pursuant to Wis. Stat. § 974.06.[5]  In his collateral challenge, Santiago argued that: (1) "he had received ineffective assistance of post

---

[4] The court has examined Santiago's March 14, 2003 letter to the court of appeals in detail.  The letter is posed as a brief "in response to  the no-merit report."  The court is being generous in culling out the three arguments above as Santiago's grounds for opposing the no-merit report, as the letter is difficult to follow and rambling.

[5] The relevant portion of Wis. Stat. § 974.06(1) provides:

> After the time for appeal or post conviction remedy provided in s. 974.02 has expired, a prisoner in custody under sentence of a court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the U.S. constitution . . . may move the court which imposed the sentence to vacate, set aside or correct sentence.

Case 2:04-cv-00788-JPS   Filed 04/29/10   Page 5 of 20   Document 71

conviction counsel"; and (2) "the State had breached the plea agreement."[6] *State*

*v. Santiago*, No. 2006AP1696, 2007 WI App 216, ¶ 3 (Ct. App. 2007). The

Wisconsin circuit court denied the defendant's motion for post-conviction relief on

June 6, 2005.[7] (Wis. State Case No. 2001CF004831 Docket #44). Three weeks

later, on June 27, 2005, the petitioner appealed the decision of the circuit court

denying Santiago's § 974.06 motion. (Wis. State Case No. 2001CF004831 Docket

#45). However, on July 6, 2005, the Wisconsin Court of Appeals notified the

defendant that the filing fee required to proceed had not been paid and ordered that

the appeal would be dismissed summarily if the filing fee was not paid within ten

days or if good cause was not shown for waiving the filing fee. (Resp't's Br. Ex. 2).

The petitioner opted to not respond to the July 6, 2005 order, and on August 1, 2005,

the Wisconsin appellate court dismissed Santiago's appeal pursuant to Wis. Stat.

§ 809.83(2). (Wis. State Case No. 2001CF004831 Docket #47).

After Judge Adelman granted Santiago a stay of this case, the petitioner

commenced with a second Wis. Stat. § 974.06 collateral challenge to his conviction,

arguing that: (1) his plea was coerced; (2) his trial counsel was ineffective for failing

to properly explain to the petitioner the ramifications of his plea agreement; (3) his

trial counsel was ineffective in helping the petitioner move to withdraw his plea; and

(4) his counsel was ineffective for failing to raise his first three claims in a post-

---

[6] The petitioner did not reveal to the court that he had made a collateral attack on his sentence in 2005. This fact was only disclosed to the court by the respondent.

[7] The decision and order were provided "off the record," and the court was not provided with any sort of indication as to the reasoning of the circuit court in its June 6, 2005 order.

-6-

conviction motion. The circuit court, in a written order issued June 20, 2006, again denied Santiago's motion for post-conviction relief.[8] In a *per curiam* decision, the Wisconsin Court of Appeals affirmed the decision of the district court. The appellate court found that Santiago's argument that his plea was coerced was barred by *State v. Escalona-Naranjo,* 185 Wis. 2d 168 (1994),[9] as Santiago had already raised that argument when contesting the no-merit report during his direct appeal. *Santiago*, 2007 WI App 216, at ¶ 7. The court of appeals also rejected Santiago's various claims that his trial counsel was ineffective: while Santiago never raised those specific claims in his direct appeal, the court held that the petitioner "had the opportunity to raise the issue he now raises" in (1) his response to the no merit report and (2) his previous 2005 motion for post-conviction relief, and did not. *Id.* at ¶ 8. The Supreme Court of Wisconsin denied Santiago petition for review of the appellate court's decision on November 5, 2007. (Wis. State Case No. 2001CF004831 Docket #61)

A little over a month later, on December 17, 2007, the petitioner filed an amended petition for a writ of habeas corpus, reopening his case. (Docket #49). The parties subsequently supplemented their earlier briefings to the court, with all materials fully briefed over a year and a half ago, on August 21, 2008. (Docket #67).

---

[8] The circuit court's opinion did not mention Santiago's earlier attempt for § 974.06 relief, but broadly stated that the "defendant previously had an opportunity to raise these claims but did not" and "he is therefore precluded from raising them in the instant motion."

[9] *Escalona-Naranjo* held that a motion made pursuant to § 974.06 must exclude all issues that were or could have been raised on direct appeal, including constitutional issues, unless the defendant provides "sufficient reason" for not raising the issues in that earlier proceeding. *Id.* at 185,

-7-

The case was randomly reassigned to this chambers in late October of 2009, and, as such, the court will now proceed to address the legal efficacy of Santiago's petition.

## DISCUSSION

As a person in custody pursuant to a state court judgment, to be eligible for a writ of habeas corpus Santiago must demonstrate that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may grant a habeas corpus application arising from a state court adjudication on the merits if the state court's decision: (1) "was contrary to" or "involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding." 28 U.S.C. § 2254(d). A state court's decision is "contrary to" federal law if the state court applied the wrong standard or decided a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Brown v. Finnan*, 598 F.3d 416, 421-22 (7th Cir. 2010). Moreover, a state court's decision is an "unreasonable application of clearly established federal law" "when a state court identifies the correct governing legal rule but unreasonably applies it to the facts of a case or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new

-8-

context in which it should not apply or unreasonably refuses to extend that principle to a new context in which it should apply." *Id.* at 422. In other words, if the petitioner challenges a state court's application of governing federal law, the decision "must be shown to not only be erroneous, but objectively unreasonable." *Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009) (internal citations omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold"). With these standards in mind, the court proceeds to examine each of the claims in Santiago's petition.

Santiago's amended petition, filed December 17, 2007, provides four grounds for relief – petitioner claims he was denied: (1) his Sixth Amendment right to effective assistance of counsel at the plea bargaining stage of his proceedings; (2) his Sixth Amendment right to effective assistance of counsel when he attempted to withdraw his plea of no contest; (3) his Fourteenth Amendment due process right when he could not withdraw his plea prior to sentencing; and (4) his Sixth Amendment right to effective assistance of counsel when his appellate counsel filed a no-merit report during his first appeal. The court will first address the ineffective assistance of counsel claims.

Case 2:04-cv-00788-JPS   Filed 04/29/10   Page 9 of 20   Document 71

**A.     Ineffective Assistance of Counsel Claims**

Given the procedural history of this case, the court finds that it is appropriate to examine whether the court can even reach the merits of Santiago's ineffective assistance of counsel claims.[10]   The above articulated standards for deciding whether a court may grant a writ of habeas corpus only control when a claim was "adjudicated on the merits" in a state court proceeding.  *Cheeks v. Gaetz*, 571 F.3d 680, 684 (7th Cir.  2009).  In order for a claim to be "adjudicated on the merits" in a state court proceeding, a state petitioner seeking a writ of habeas corpus must first exhaust the remedies available to him or her in state court, 28 U.S.C. § 2254(b)(1)(A), "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Cheeks,* 571 F.3d at 685 (internal citations omitted).  State remedies are exhausted when the petitioner does not have "the right under the law of the State to raise, by any available procedure," the issues presented in his petition.   28 U.S.C. § 2254(c).   "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim."  *Cheeks,* 571 F.3d at 685.  To avoid procedural default, a "habeas petitioner must fully and fairly present his federal claims to the state courts," which requires the "petitioner to give

---

[10] Normally, this court will make such an examination via a screening order made pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, which authorizes a district court to conduct an initial screening of habeas corpus petitions and to dismiss a petition summarily where "it plainly appears from the face of the petition . . . that the petitioner is not entitled to relief."  Here, as this case was transferred to this chambers at a rather late stage of the proceedings, no significant screening has been done to ensure that the petitioner exhausted his claims and had not procedurally defaulted on his claims.  As a result, an examination of exhaustion and procedural default doctrine must occur in this order.

state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006).[11] Moreover, "for a constitutional claim to be fairly presented to a state court, both the operative facts and the controlling legal principles must be submitted." *Rodriguez v. Scillia,* 193 F.3d 913, 916 (7th Cir. 1999).

A petitioner can also procedurally default a federal claim by failing to meet a *state* procedural requirement. *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009). A federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment. *Id.* A state ground is deemed "independent" for this purpose "only if the state court actually relied on a state rule sufficient to justify its decision." *Prihoda v. McCaughtry*, 910 F.2d 1379, 1382 (7th Cir. 1990). A state ground is considered "adequate" only if the state court applies the rule "in a consistent and principled way." *Id.* at 1383.

Here, it is obvious that Santiago procedurally defaulted on his ineffective assistance of counsel claims because he both failed to: (1) fairly present his federal claims to the state courts; and (2) meet a state procedural requirement when

---

[11] The *Anderson* court noted four factors to look at when determining whether a petitioner has "fairly presented his federal claim to the state courts: 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Anderson,* 471 F.3d at 815.

Case 2:04-cv-00788-JPS   Filed 04/29/10   Page 11 of 20   Document 71

presenting his claims to each state court. In his amended petition, Santiago argues that he received ineffective assistance of counsel during: (1) plea negotiations; (2) the petitioner's attempts to withdraw his plea; and (3) his appeal. The court notes that during his direct appeal, in response to the no-merit report, the petitioner did not make any of these arguments. Instead, the petitioner merely claimed that his trial counsel was ineffective for failing to introduce mitigating evidence during the sentencing, an argument that Santiago does not raise in his current petition. Moreover, the court notes that in Santiago's first collateral attack on his sentence via Wis. Stat. § 974.06, the petitioner never made any of three instant arguments for why he was denied his right to effective assistance of counsel to the Wisconsin Court of Appeals or the Supreme Court of Wisconsin. The petitioner failed to pay his filing fee and failed to provide a reason why the filing fee should have been waived, necessitating that the appellate court dismiss Santiago's motion. Moreover, the petitioner's second § 974.06 motion attempted to raise the three arguments he currently raises as to why his trial and appellate counsels were ineffective. However, the state trial court and state appellate court never reached the substance of those arguments, as the courts found that Santiago was procedurally barred under Wisconsin law from making such claims because he had failed to: (1) make the ineffective assistance claims in his direct appeal; and (2) present the ineffective assistance claims to any Wisconsin appellate court during his first § 974.06 motion. The state appellate court found that under *State v. Tillman,* 2005 WI App 71 (2005),

-12-

issues that could have been, but were not raised in an earlier § 974.06 motion may not be raised in a later motion unless the party establishes "sufficient reason" for failing to previously raise the issues. There is no dispute that the state court relied on a state procedural rule in dismissing Santiago's second § 974.06 motion, making the state rule "independent" of the federal claim. Moreover, this court has recognized the doctrine in *Tillman* as an "adequate" procedural ground for not reaching the merits of Santiago's claim. *Morales v. Lundquist*, No. 06-CV-0600, 2007 U.S. Dist. LEXIS 91612, at *7 (E.D. Wis. Dec. 3, 2007) ("However, petitioner procedurally defaulted the [ineffective assistance of counsel] claim by failing to raise it in state court"). In short, the Wisconsin courts have never had an opportunity to opine on the merits of Santiago's current ineffective assistance claims because of an independent and adequate state procedural rule and, therefore, the petitioner has procedurally defaulted on those claims.

The petitioner makes two arguments as to why he is not procedurally barred from raising the ineffective assistance of counsel claims. First, the petitioner argues that the respondent "conceded that Santiago exhausted all available state remedies." (Pet'r's Reply Br. 3). However, Santiago is confusing the concepts of "exhaustion" and "procedural default." While both doctrines are grounded in principles of "comity, federalism, and judicial efficiency," the concepts are distinct. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). Whereas the exhaustion doctrine requires a petitioner to pursue all of his or her state-court remedies before

-13-

proceeding to federal court for habeas relief, the procedural default doctrine precludes a federal court from reaching the merits of a habeas claim even if the petitioner has exhausted all of his or her claims if the petitioner did not fully and fairly present those claims to the state court or if the state court did not reach the merits of the claim because of a procedural bar. *Id.* Accordingly, it is irrelevant if the respondent waived the argument that the petitioner did not exhaust his state remedies.

The petitioner also argues that "Santiago had no available avenue of relief left to him in state courts," and the "filing of the first and second § 974.06 motion and any appeal following was fruitless." (Pet'r's Reply Br. 4). This statement is unsupported, and the court fails to understand why Santiago could not have asserted and fully appealed his ineffective assistance of counsel claims in his first § 974.06 motion. In fact, the Seventh Circuit has stated that the "appropriate forum" for such a challenge is in a § 974.06 motion. *Page v. Frank*, 343 F.3d 901, 908 (7th Cir. 2003).[12] The Wisconsin courts have never ruled on the substance of the three present ineffective assistance of counsel claims and, as such, the petitioner has procedurally defaulted on his claims.

---

[12] Santiago cites to *Page*, stating that the Seventh Circuit held that a petitioner does not waive an argument regarding ineffective assistance of counsel just because the petitioner omits the issue in a *pro se* response to a no-merit brief on direct appeal. While that is true, this case is distinguishable from *Page*, in that here Santiago not only omitted his ineffective assistance claim during his direct appeal, but he also failed to pursue the claim during his first collateral attack on his sentence, preventing the Wisconsin appellate courts from ever ruling on the claim.

Case 2:04-cv-00788-JPS   Filed 04/29/10   Page 14 of 20   Document 71

However, the procedural default doctrine does not impose an absolute bar to federal relief. *Perruquet,* 390 F.3d at 514. Despite a procedural default, a court may rule on the merits of a claim if the petitioner either demonstrates cause for his default and prejudice resulting therefrom, or that a miscarriage of justice will result if the court does not consider the merits of the case. *Id.* Establishing "cause" requires demonstrating an external obstacle prevented the petitioner from fairly presenting the federal claim in state court, and actual prejudice, not merely a possibility of prejudice, is required. *Id.* at 514-15. The "miscarriage of justice" exception applies when the petitioner can demonstrate that he is actually innocent. *Id.* at 515. Having said that, Santiago does not even argue that he meets the requirements for these exceptions to the procedural default doctrine, and, as such, the court need not reach the merits of his ineffective assistance claims.[13] *Anderson,* 471 F.3d at 815 (holding that where a petitioner does not even make an argument as to why one of the exceptions to the procedural default doctrine apply, the court need not address the issue). The court will dismiss the ineffective assistance claims for procedural default.

---

[13] Regardless, none of the exceptions to the procedural default doctrine apply in this case. Santiago's *pro se* status or lack of legal knowledge does not constitute sufficient cause to excuse his procedural default. *Salberg v. United States,* 969 F.2d 379, 383 (7th Cir. 1992). Had the petitioner merely paid the filing fee or asked that the Wisconsin appellate court to waive his filing fee, the Wisconsin courts could have reached the merits of Santiago's appeal. Moreover, no fundamental miscarriage of justice will occur by the court not reaching the merits of Santiago's claims, as Santiago readily admits that he committed the homicide of Ms. Boone. *United States v. Badillo,* 63 Fed. Appx. 895, 900 (7th Cir. 2003).

-15-

**B.    Due Process Claim**

Santiago's remaining ground for relief is that he was denied his procedural due process rights because his plea of no contest was involuntary. Specifically, the petitioner contends his trial counsel coerced him into pleading to the charge, the prosecutor threatened him with a higher charge if he did not plead out, and the Wisconsin courts refused to let Santiago withdraw his plea prior to sentencing. Here, the court can reach the merits of the petitioner's claim because Santiago raised his argument in his direct appeal in reply to the no-merit report and because Santiago appealed a decision on the merits of the due process claim to Wisconsin's highest court. *See Jenkins v. Nelson*, 157 F.3d 485, 497-98 (7th Cir. 1998) ("[W]hen the last state court to address the issue reaches its merits without invoking forfeiture, the question is open on collateral review under § 2254.")

The petitioner must prove the Wisconsin courts acted "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A plea is valid "only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences. *Wozny v. Grams*, 539 F.3d 605, 608 (7th Cir. 2008). Here, the Wisconsin courts found that Santiago's plea was made knowingly and voluntarily, and this court must "accord a presumption of correctness to the state court's findings of fact." *Id.* at 609. The petitioner stated under oath that he understood the consequences of entering a plea, and Santiago

-16-

cannot "obtain relief by the expedient of contradicting statements freely made under oath, unless there is a compelling reason for the disparity." *Nunez v. United States*, 495 F.3d 544, 546 (7th Cir. 2007).

Santiago asserts three reasons for the disparity between the statements he made under oath during his plea colloquy and his present contentions. First, the petitioner argues that he was confused and ignorant as to what the plea agreement entailed. However, earlier sworn statements "cannot be set aside the moment the oath-taker alleges that he did not understand." *Singh v. Gonzales*, 487 F.3d 1056, 1060 (7th Cir. 2007). Nothing in the record indicates that the plea colloquy was hurried or confusing – Mr. Santiago repeatedly stated that he understood the nature and consequences of his plea agreement, and the court will not grant a habeas petition based on the prisoner's belated and convenient attempts to claim that he did not understand what he swore to under oath. *Id.* Second, Santiago argues that his trial counsel induced him into pleading no contest. However, the record is devoid of any evidence that Santiago's trial counsel forcibly caused the petitioner to plead no contest.[14] In fact, the petitioner stated under oath at the change of plea hearing that he was satisfied with his attorney's performance. Santiago could have easily voiced his concerns about the plea agreement at the time of the hearing. The court must presume the representations made under oath during a plea colloquy are

---

[14] Santiago's brief is incoherent as to why his trial counsel pressured him into the plea agreement. The petitioner alludes to the idea that his trial counsel was ineffective when he negotiated the plea agreement, but this argument is not only procedurally barred, but makes little sense as a reason for why Santiago did not voluntarily plead no contest.

truthful, and without any evidence to overcome that presumption, Santiago's argument regarding why he was pressured into the plea agreement by his trial counsel fails. *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004). Finally, the petitioner contends that his plea was involuntarily given because the prosecutor threatened to increase the charge if Santiago did not accept the plea. While a prosecutor may not "punish" or "retaliate" against a person for exercising his or her constitutional rights to seek a trial, it is well-settled that "in the give-and-take of plea bargaining," the prosecutor does not take an illicit action "so long as the accused is free to accept or reject the prosecutor's offer." *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978). Here, the prosecutor did not punish Santiago, but, at best, merely promised that if the petitioner did not resolve the case by pleading no contest, the prosecutor would seek a more serious charge. There is nothing unlawful about a prosecutor threatening to seek more serious charges if the defendant opts to not plead guilty or no contest. *Id.; see also United States v. Goodwin*, 457 U.S. 368, 380 (1982) (holding that there was no due process violation where a prosecutor actually did file more serious charges after his initial expectation that the defendant would plead guilty to lesser charges proved unfounded). In short, none of the arguments Santiago asserts persuades the court that the Wisconsin courts acted contrary to or unreasonably applied clearly established federal law when Santiago's motion to withdraw his no contest plea was

-18-

denied. Without any other viable grounds for relief, the court is obliged to dismiss Santiago's petition for habeas relief.

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), the applicant must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (internal citations omitted). While Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue, additional argument is not necessary here. Given the record before the court, no reasonable jurist would find it debatable whether this court was correct in its ruling on the present motion. As a consequence, the court must deny a certificate of appealability as to the petitioner's motion.

Accordingly,

**IT IS ORDERED** that the petitioner's "amended petition for Writ of Habeas Corpus" (Docket #49) be and the same is hereby **DENIED**;

-19-

**IT IS FURTHER ORDERED** that a certificate of appealability as to the petitioner's motion be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of April, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge